Milligan, J.-
delivered the opinion of the court:
The plaintiffs in this action claim to be citizens of the empire of France, and that in the spring of the year prior to the breaking out of the late rebellion in the United States they were the lawful owners of three hundred and sixty-six hogsheads of *215 tobacco, wbicb were stored in the- city of Richmond, Virginia, and which remained there until the capture of said city by the United States military forces, in April, 1865. Soon after the fall of Richmond, as the claimants allege, the tobacco was seized by the agents of the United States Treasury Department, who claimed the same as property captured jure belli.
The claimants further allege that, as soon as the judicial tribunals of the State of Virginia were reestablished, they commenced legal proceedings in the court of hustings, of the city of Richmond, to recover the possession of said tobacco, and to restrain the agents of the United States from further interfering with it.
It is further charged in the petition that, while said actions were pending and undetermined,.the claimants stipulated with the agents of the United States Treasury Department, acting under the authority, approval, and direction of the Secretary of the Treasury, by which it was agreed, for the protection of the rights of both parties, that said tobacco should be sold and the proceeds converted into bonds of the United States, and the bonds deposited in the First National Bank in the city of Washington, District of Columbia; that the suits then pending in the court of hustings should be dismissed and the claim of the petitioners and of the United States to the possession of the tobacco, or its proceeds, should be decided by this court.
In conformity to the written agreement of the parties, entered into on the 27th day of May, 1867, and approved by the Secretary of the Treasury, this suit was instituted under the third section of the Act 12th March, 1863; and the court finds the ultimate facts to be as hereinafter set forth, which are more at large drawn out and filed with the record:
1. The claimants are aliens — subjects and residents of the empire of France.
2. They were the lawful owners of three hundred and sixty-sis hogsheads of tobacco, which were purchased prior to the war, and stored in -the city of Richmond, Virginia, where they remained until after the occupation of that city by the national military forces, when they were seized by authority of the United States, and since claimed by them as captured property.
3.- On the. 27th of May, 1867, the following agreement was entered into by the district attorney for Virginia, acting for the *216 United States, and tbe attorneys of tbe claimants, wbicb was approved by tbe Secretary of tbe Treasury, viz : ■
“ Whereas there are stored in Anderson’s warehouse, in tbe city of Richmond, and State of "Virginia, about two hundred and fifty-three hogsheads of leaf tobacco, and in Myer’s warehouse, in said city and State, about one hundred and thirteen hogsheads of leaf tobacco, all of which are claimed by the firm of De Rothschild Brothers, of Paris, in the empire of France, to be their property; and whereas said tobacco is claimed by the United States of America as captured and abandoned property; and whereas it has been agreed between said claimants that their respective claims to the tobacco aforesaid, and all claims connected or. arising therefrom, shall be decided by the judgment or decree of the United States Court of Claims, in proceedings to be hereafter instituted in said court; and whereas the tobacco aforesaid is liable to loss and injury by being kept until such judgment or decree can be had, it is now therefore agreed by the said claimants that William W. Crump and John S. Loomis, of the city of Richmond, in the State of Virginia, are hereby constituted commissioners and agents, with the following powers and duties, to wit: They shall proceed forthwith to have all of the said tobacco resampled and reweighed; they shall give public notice, by publication in two newspapers in the city of Richmond, one in the city of Baltimore, and one in .the city of New York, of a time and place of sale, said notice to be published for at least two weeks, and shall at such time and place sell said tobacco by public auction for cash. They shall out of the proceeds pay all necessary and proper expenses and costs of such sale, including a commission of five per centum for themselves; they shall pay such charges for storage, insurance, and inspection as they shall find on rigid examination to be due on said tobacco, including all necessary expenses thereon paid by said Loomis heretofore, and the balance remaining they shall invest in bonds of the United States, which shall be delivered and paid over to the party" entitled to the same by the judgment or decree of the said Court of Claims, and which said bonds, until said judgment or decree shall be rendered, shall be deposited in the First National Bank of Washington, District of Columbia. But if, before any judgment or decree be rendered by the said Court of Claims, the claim of De Rothschild Brothers to said *217 tobacco be admitted by the Treasury Department of the United States, then and in such event the said bonds shall be delivered and paid to the said De Bothschild Brothers; and whereas there are now pending in the court of hustings for the said city of Bichmond an action of detinue against B. H. Dibrell, an action of detinue against W. W. Weisiger, a suit in chancery against B. H. Dibrell and John S. Loomis, and a suit in chancery against W. W. Weisiger and John S. Loomis, in all of which the firm of De Bothschild Brothers are plaintiffs, and all of which are brought with the object of recovering said tobacco, it is now agreed that each of said four suits be dismissed. Agreed.
“In testimony of all which, this agreement is signed in triplicate on the part of the United States by L. IT. Chandler, district attorney of the United States, and on the part of De Bothschild Brothers by Ould & Carrington and Wm. W. Crump, their attorneys, this twenty-seventh day of May, 1867.'
“L. H. OHANDLEB^
“ United States District Attorney for Yirginia.
“DE BOTHSCHILD BEOS.,
“ By OULD & CABE1NGTON,
“ WM. W. CBUMP, ■
“ Their Attorneys.
“W. E. C. Approved: ■ H. McCULLOCH,
“ Secretary of the Treasury.”
4. Pursuant to this agreement the several actions pending in the courts of Bichmond were dismissed and the tobacco sold. “ The gross proceeds of the sales,” (as stated by the witness Belmont,) “as reported, were $64,471 08; from which were deducted $4,000 for storage and cooperage, and $3,000 for commissions, leaving the net sum of about $56,800,” the proceeds of which are now in bank under the aforesaid agreement.
5. We also find, as a matter of fact, that the claimants neither by themselves as individuals, nor as a firm through their banking house in Paris, or elsewhere, gave aid or comfort to the late rebellion in the United States, or to persons engaged therein throughout the war.
6. We further find, as an ultimate fact, that the government of France accords to citizens of- the United States the right to prosecute claims in its courts against the government, as fully and substantially as the right is accorded to citizens of the United States to prosecute claims against their government.
*218 On these facts, as enlarged and set forth more in detail in the regular findings of the court, no question has been raised in the argument of counsel against the claimants’ right to recover, except that which grows out of the provisions .of the second section of the Act 21th July, 1868.
The claimants are aliens, subjects of the empire of France, and need not, therefore, as this court has repeatedly held, prove affirmatively that they did not during the rebellion consistently adhere to the United States, as provided in other cases by the third section of the Act 25th June, 1868. It is enough, if an alien shows himself otherwise entitled to sue in this court, that he prove to the satisfaction of the court that he has observed a strictly neutral course throughout the war, and given no aid or comfort to the rebellion.
In this case the claimants bring themselves strictly within the rule, and no objection on this ground is made in the argument, or can be successfully maintained to'their right to sustain this action.
The ownership of the tobacco, and its capture by the military forces of the United States, is not challenged, notwithstanding the latter is only implied from the record, and the recitals in the written argument of the parties of the 27th of May, 1867, which has the approval of the Secretary of the Treasury.
.The right of the government to the property being rested on the ground that it was captured, and the proceeds of the sales of the tobacco having been, with the sanction of the Secretary of the Treasury, converted into government bonds, and those bonds placed in the First National Bank, in this city, to await the decision of this court, under the written agreement of the parties, we feel bound to take cognizance of the case, and deal with it as if the tobacco had been regularly sold by the Treasury agents, and the proceeds covered into the Treasury.
Treating the case in this light, there is no obstacle in the way of the claimants’ right to recover, unless they are barred from prosecuting their suit by the second section of the Act 21th July, 1868.
This provision of the statute is a flat bar to the claimants’ right of action in this court, unless they have brought themselves within the provisions of the proviso in the second section, which is in the words following:
££ That this section shall not be construed so as to deprive *219 aliens, who are citizens or subjects of any government which accords to citizens of the United States the right to prosecute claims against such government in its courts, of the privilege of prosecuting claims against the United States in the Court of Claims, as now provided by law.”
The section of the statute in which this proviso is incorporated was evidently intended by the legislature to restrict the right of aliens to sue the government of the United States to those whose home governments accord to citizens of the United States a reciprocal right of prosecuting claims against their governments and in their courts. The words uits courts,” employed in the proviso, cannot be held to limit the right of action in a foreign government in a court organized in such government in all respects similar to this court. The requirements of the statute will be complied with if a citizen of the United States have the legal right, according to the forms of procedure( in such government, to prosecute in its courts to judgment against the government a claim which, if the case arose under this government, he could, under the same circumstances, prosecute to judgment against the United States.
The, claim presented in this record is for personal property, tobacco, purchased by the claimants in this country, through their agents, before the war, and placed on storage in Richmond, Yirginia, where it remained until near the close of the war, when it was captured by the United States military forces. It cannot be doubted, under the circumstances of this case, had the tobacco belonged to a citizen of the United States who had consistently adhered to the United States, and given no aid or comfort to the rebellion, that he could, under the provisions of the uAbcmdoned or captured property acts,” have come into this court, and, under proper averments in his petition, obtained a judgment for the net proceeds covered into the Treasury.
. The claimants, standing in the attitude of foreigners, who have strictly observed their neutrality, and given no aid or comfort to the rebellion, can, Avith equal right, if they have brought themselves within the provisions of the proviso here-inbefore quoted, maintain this action and prosecute it to judgment.
And this brings us to the consideration of the French law, as proven in this case. It appears in the facts found by the court that, by the written laws and precedents of France, a *220 subject has tbe right to sue the French government for real and personal property detained by that government; and that the rights of American citizens to sue the French government for real estate and personal property detained by it are exactly the same as those enjoyed by French citizens, subject only to giving security — judicatum solvi.
' The mode of procedure in cases of this kind, as well also as in cases arising out of contract with or supplies furnished to the French government, are all specifically stated by the learned witnesses who quote the law, and show the tribunals on which, in each class of cases, the suit should be instituted, and each tribunal is declared to be strictly judicial and complete within its jurisdiction.
It is objected, however, by the defendants’ counsel, that neither the written law as set out in the record, nor the proof of its existence, is sufficient to authorize this court to receive and recognize the French law as interpreted by the learned experts examined in the case.
The rule of law in respect to the proof of foreign law is too well and firmly settled by the Supreme Court of the United States in the case of Ennis v. Smith et al., (14 How., p. 401,) and the authorities there cited, now to be shaken. See, also, 1 G-reenleaf Ev., sec. 488.
In harmony with this case, Judge Story, in his Conflict of Laws, section 642, says: “But foreign unwritten laws, customs, and usages may be proved, and indeed must ordinarily be proved, by parol evidence. The usual course is- to make such proof by the testimony of competent witnesses, instructed in the laws, customs, and usages, under oath.”
The Gode Napoleon, and the Code Civil, from which citations are made in the testimony, we hold to be sufficiently authenticated, under the authority in the Ennis case, by virtue of the authorized reciprocal interchange of statutes, &c., between this government and the government of France. But these citations are claimed to be somewhat equivocal, and capable of different constructions as to the rights conferred under them; and if so, in such a case we are authorized, by the decision in Ennis’s case, to admit the parol testimony of competent witnesses instructed in the laws, customs, and usages of such foreign government as to the interpretation of and practice under such laws. We can go to no higher authority, and, from the neces *221 sity of tbe case, are constrained in snclr case to accept tbeir interpretation.
In this case these learned witnesses declare in terms, that the right of an American.citizen to sue the French government rests on the “ written lato and precedents,” which they set out and assert in practice authorize a citizen of the United States to sue the French government for real estate or personal property detained by it, as well also as in matters of contract with or supplies furnished to that government.
We feel compelled, therefore, to hold that the claimants have brought themselves within the provisions of the second section of the Act 21th July, 1868, and are entitled to maintain this action and to recover the balance of said fund after deducting the necessary expenses, as provided by the agreement of the parties, dated the 27th of May, 1867, and the balance, as therein provided, remaining in bank, shall be delivered and paid over to the claimants.